M.D. and Douglas F. Greer M.D. P.C. doing businesses downtown of Dalmauji Center, Appellants, Mr. Kumar for the Appellants, Mr. McDaniel for the Appellee. Good morning, Mr. Kumar. We'll hear from you. Good morning, Judge Wilkins. May it please the Court. Suraj Kumar for Dr. Doug Greer. The District Court ordered Dr. Greer to sell his house and hand over the proceeds to the federal government. That decision should be reversed for two reasons. First, the government's 2016 claim alleging breach of a 2007 settlement agreement is barred by the six-year statute of limitations. Second, even if the government's claim were timely, the agreement is unenforceable because it would require the sale of a house without providing a sale price, how that price is calculated, or when the house must be sold. The government's claim is time barred based on the text of the statute and the agreement, the undisputed factual record, and sound policy. Under 28 U.S.C. 2415A, breach of contract claims shall be barred unless the complaint is filed within six years of when the right of action accrues. And the government concedes on page 41 of its brief that a claim accrues when the events necessary to state the claim have occurred, not when the government discovers the breach. A separate provision, section 2416, holds a limitation period when material facts are unknown. The government expressly disavowed reliance on that provision for the District Court, and it doesn't rely on it here. And the government's own authority, United States vs. Commodities Export Company, says that the government can't unilaterally postpone the accrual of a claim. The text of the agreement reflects performance within months, not years. The express purpose is to avoid the delay, inconvenience, and expense of protracted litigation. And paragraph 3, the False Claims Act waiver, shows that the parties knew how to waive statutes of limitations and didn't do so for breach of contract claims. In fact, the parties separately referred to breach of contract claims and expressly carved them out of the agreement. Paragraph 5. When the agreement was reached in July, I believe it was signed two days before Mr. Greer's sentencing, or Dr. Greer's sentencing. Am I correct about that? Yes, Your Honor. So at that time, the parties didn't know what his sentence would be, correct? That's correct, Your Honor. And the parties didn't know whether he would be stepped back or remanded into custody after his sentencing. Isn't that correct? Yes, Your Honor. One thing I'd like to say, though, is that the government relies on the 51-month potential sentence, an argument that they didn't make for the district court. But I think contract interpretation is about the shared expectations of the parties. And Dr. Greer opposed that 51-month proposed sentence. I understand that, but the guidelines range was encompassed 51 months, right? That's my understanding, Your Honor, yes. And I guess here's where I'm getting at, is that whatever expectations or hopes Dr. Greer had, there were no guarantees. And it was certainly a reasonable possibility that he would go to prison, that he could go to prison for three, four, five years, in that he might even be remanded in custody in two days after signing this contract at his guilty plea. And so that being the case, why should we hold that the only reasonable way to interpret this is that he had a duty to sell this within six months? So I'd like to suggest sort of three sources for showing that six months is a reasonable time, and then make a broader point about the reasonable time analysis in this case. I think the court should break this down into time periods. So the first time period is between July 2007 and November of 2007, when Dr. Greer was performing his obligations under the agreement. That is, he paid $189,000 to the government in September of 2007. He made restitution payments after emptying out his retirement accounts. And if the court looks to the text of the agreement, paragraph two says that he shall do three things. And he did two of those three things in four months. That's a pretty good reflection of the party's expectations. Now, as to the time that he, and by the way, I would point out that the district court's holding against Dr. Greer on summary judgment, which is really an inference, is flatly contradicted by the actual performance history. The district court said his life was too chaotic for him to perform the agreement, but he was performing both his civil and his criminal obligations. Now, as to the time that he was in prison, it was reasonable for him to have the house sold at that time, because as the government points out in its brief, his wife lived just a few blocks away, and a realtor could have assisted with the sale. It's not as if Dr. Greer had to be present at every showing for the house to be sold. And I think it's notable, as Your Honor pointed out, that there was a criminal sentence contemplated, but the government didn't pull the statute of limitations, nor did the government make the obligation to sell the house conditioned on Dr. Greer's release from prison. And the government could have done either one of those things, or the government could have exercised its enforcement discretion and waited until he left, even under our view of the contract as written, waited until he was released from prison. And it would have still had five years to sue Dr. Greer for breach of contract, but it didn't do any of those things. Instead, there was no contact between the government and Dr. Greer for eight and a half years, and it's notable that the government doesn't cite a single case. But all we have to find is whether or not the proper interpretation of the contract is that performance of the selling of the house had to occur within, I think it's two years, nine months, and three days, or whatever it is. Right, by April of 2010. Correct, Your Honor, and I think that brings me to the third period that I was going to get into, which is the time that he was on supervised release. The same thing that I said about his time in prison, that his wife or a realtor could have handled the sale, is true then. The district court said that he was on home confinement, and that's true. That was only for six months, and even as to that six-month period, the conditions of his supervised release show that he was able to leave his house with permission, and he in fact did. As he testified at his deposition, he left the house to attend his son's graduation in 2009. Now, in the face of all of that, in the face of performance within months, the text of the agreement, and the fact that the government knew how to waive or extend time periods, the government insists that there was this intent for him to rebuild his life based on an extended performance period. One thing I would note, I was going to say earlier, paragraph 5D of the agreement, because that's something that the government cites in its brief. It's at page 17 to 18 of the appendix. That provision, it refers to claims based upon such obligations as are created by this agreement, so breach of contract claims, and it expressly carves them out of the agreement. So it says those claims are excluded from the scope and terms of the agreement. So the parties didn't agree to do anything with respect to breach of contract claims, let alone postpone, accrual, or waive, or extend the statute of limitations. I think what that provision is intended to do is clear from the plain text. So it's intended to waive the limitations period for a false claims act lawsuit regarding the allegations settled herein. Those allegations, as is clear from the first page of the settlement agreement, date back to April of 2000. Now, so by 2006 or 2007, that's when the government would have to file a false claims act lawsuit because, as Justice Thomas pointed out in his opinion for the court in Graham County, the false claims act clock starts to run on the date that the false claim for payment is submitted. And so by 2006 or 2007 or even early 2008, the government might not be able to both A, determine whether Dr. Greer had performed under the agreement, and B, file a false claims act lawsuit against him. So that's what that – On the first page of the settlement agreement, it says – it's the first whereas. And it says, whereas the United States determined that Greer violated the false claims act when he knowingly submitted claims for payment for services not rendered or not necessary during the period April 1st, 2000 through December 31st, 2006. So let's take whatever he did illegally on December 31st, 2006. When would the six-year statute of limitation to run out for the government to bring a false claims act prosecution against him? So, Your Honor, if it was a false claim submitted on December 31st, 2006, then yes, the limitations period would expire on December 31st, 2012. But to be clear, the clock starts running on the date the false claim for payment is submitted. So it's just as likely that the intent was to preserve claims based on the earlier allegations. The other point that I'd make, Your Honor, is that relying on – Each claim has a separate limitations period, right? Yes, Your Honor, depending on the date. It would just depend when the claim was made, right? Yes, Your Honor. And so the other point that I'd make, though, about paragraph 3, the false claims act waiver, is that relying on that provision to be an implied indefinite extension of the breach of contract claim accrual period or limitation period essentially reads paragraph 5D out of the agreement because the parties didn't reach any agreement. And there's also case law saying that limitations – waivers of limitations period need to be expressed and unequivocal. Now, this would be – Let me go back, Mr. Kamar. It is, I think, not a Michelangelo in terms of contract drafting, but we have to take the textual clues that we have. It refers in the first whereas to false claims made through December 31, 2006. Maybe the last claim was made November 30, 2006, but if it had been made November 30, 2006, it seems reasonable that this settlement agreement would have said through November 30, 2006. I think the best implication – it's not infallible, but the best implication of this language is that the government thought he had made false claims through December 31, 2006, namely that he made at least one false claim on December 31, 2006. Now, if that's the case, the statute of limitations for bringing a suit to hold him accountable for that, that statute of limitations would run out December 31, 2012. And everything – I got a follow-up question obviously, but everything I've just said is correct, correct? Your Honor, if I could just make one caveat to that, which is that suppose the government – suppose, in fact, there was a claim submitted on November 30, 2006, and that was one claim. But many of the other claims have been submitted in 2000 or 2001 and 2003. A False Claims Act lawsuit filed in 2012, it couldn't be based on those earlier claims. So I think that is my point about what a better interpretation of that provision would be. So I get it, but let's say that there was a false claim made on December 31, 2006. The government could bring suit with regard to that one false claim on December 31, 2006. They could bring that suit as late as December 2012, correct? Yes. Okay, and then when you go to paragraph three, we're looking for textual clues about how long the party is expected it would take Greer to sell his house. And section three basically says you got to document that you sold your house. And if you don't document that you sold your house, we can bring False Claims Acts against you. That makes total sense. There would be no need to add the last sentence of paragraph three if the expectation was that Greer would sell his house before December 2012. Because the last sentence says the statute of limitations for those claims, for the false claims, that statute of limitations is waived by the signing of this agreement. So tell me why that isn't the best textual clue we have that the people who made this inelegantly drafted contract anticipated that it might take Greer longer than December 2012 to sell his house. And if they didn't anticipate that it would take him longer than 2012 to sell his house, what is that last sentence doing in paragraph three? So three responses, Your Honor. First, as to the point that there would be no need for the provision, I think my point stands earlier about the earlier allegations. Second, again, by relying on paragraph three to extend section 2415, the court would be reading an implied waiver as to breach of contract claims even though those claims are carved out of the agreement. So the parties didn't agree to do anything with respect to breach of contract claims. You're assuming that the breach happens if he doesn't sell his house within a year or within two years. But if we're trying to figure out what's the reasonable time to perform, what's the reasonable amount of time to sell the house, then this is not an implied waiver of a contract term. It's an incorporation of an implied contract term, namely the implied contract term that says he has six-plus years to sell his house. Well, Your Honor, I think what you would be doing if you read it that way is reading – is postponing the accrual period for the breach of contract claims in violation of paragraph D. But even if the court doesn't agree with me on that, I think it would really be inferring something from nothing because the parties didn't provide for an extended or flexible time period for performance. They said he shall do three things. He did do those three things in four months. And I think that's why at sentencing – and this is at page 283 of the supplemental appendix – the prosecutor said that the government was grateful to conclude everything at once. That's what this was. This was a global civil criminal resolution. That's why he was making payments and doing everything except for sell the house in 2007. So to read a sort of alternative reality and say actually we wanted to give him time to rebuild his life or he actually had years to do this other thing even though he did everything else in four months, I don't think that's plausible. I'm going to ask you to guess something, and I acknowledge that you can't guess with perfect accuracy, and I would also acknowledge that you probably don't have an incentive to guess as accurately as you could. But if the government came to him a year after the settlement agreement and said, we want you to sell your house, and he says, I'm in jail. It's not reasonable to expect me to sell my house right now. And our contract didn't say I had to sell it right away, and so we should read the contract to allow a reasonable amount of time for me to sell my house, and I just can't get it done right now. Don't you think that's exactly what he would have said, and don't you think that his lawyer would have had a pretty good argument at that point? So frankly, your honor, I think that would have been a tough argument, an uphill argument, because we would be in the same position that the government's in right now because the government would say, well, what do you mean the contract wasn't – the contract, it's not time for performance? You already performed in 2007. You paid $189,000 in September. So I think that would be a tough argument because we would be arguing for an extended performance period as the government is now without any evidence in the factual record or the text. Now, I want to be clear, though, that the government – it's not like the government was out of options. So as I mentioned, the government could have in its enforcement discretion decided not to sue and could have done so anytime between 2009 and 2016. It didn't do that. The government knew he was going to prison, didn't toll the limitations period or make the obligation expressly contingent on his release from prison, didn't do that either. There's no contact for eight and a half years, and I think that's why ruling for the government in this case would actually be a pretty broad ruling with harmful consequences because it would be incentivizing sloppy contract drafting. It would encourage open-ended obligations to the government and discourage prompt recovery of False Claims Act claims, whereas a ruling for Dr. Greer, because this is such an extreme case, I think it would be fairly narrow and confined to the facts of this case. My last question is, anything in the record of why he didn't sell the house? So, Your Honor, at his deposition, he testified that after emptying his retirement accounts and paying the $189,000, he just thought everything had gone away. But what I'd point out is that that deposition happened ten and a half years after the agreement was signed, which is precisely why we have statutes of limitations. Dr. Greer is 80 years old. Understandably, he didn't remember much from that time period. But in the words of the Supreme Court, statutes of limitations are pervasive legislative judgments that protect not just defendants but also courts from having to sort through all this stuff when there are stale claims and fading memories. And that's why I think holding that the claim is time-barred is appropriate here. Mr. Kumar, you are asking us to grant your motion for summary judgment and deny the government's motion for summary judgment. That was a position you took in the district court. You are not saying that the determination of what is a reasonable time to perform is a jury question? Correct. It's a question of law, Your Honor. And one other question. At the time that the settlement agreement was executed, the parties didn't know the amount of the fine that the court would impose, correct? I believe the – correct. The court hadn't ordered the restitution at that point. And the fine. Ultimately, Dr. Greer received at his sentencing two days later a $50,000 fine. But the fine he was facing under at least a healthcare fraud claim was up to – in excess of $2 million because it could be up to double the amount of loss, correct? I'm not sure of the exact details of that, Your Honor. But I think if what Your Honor is suggesting is that because the punishment was very severe, the government intended to give him a longer time to perform, that's just not borne out by the record. On the same page that the prosecutor talked about that being grateful to have resolved everything at once, the government said he stole these things. He needs to give them back. So I think to say that – so first of all, what the question implies I think is drawing an inference against Dr. Greer. But Your Honor correctly pointed out that we're seeking an order directing summary judgment for Dr. Greer. There's no evidence that the government wanted to give him time to rebuild his life or wanted a flexible time period. And one would think that if that were the government's intent, there would be something in the contract or a statement at sentencing or something – an email or something like that that they could point to. But this is really just an after-the-fact excuse for nearly a decade of delay. Well, I guess the point that I'm getting at here is that the amount of the fine and the restitution and the assessments was right around $1.3 million. And Ms. Dr. Greer was able to pay all of that before he went to prison in November by emptying out his retirement accounts and et cetera. But that wasn't a given. If the court had fined Dr. Greer $1 million, he wouldn't have had enough money to satisfy his fine and the restitution and the assessment. And he would have needed to sell the house in order to make up the difference. And as you mentioned enforcement proceedings, but an enforcement proceeding that the government could make to kind of force the sale of the house to recoup the amount of the fine or restitution, that can be made 20 years after sentencing or after the defendant gets out of prison. So I guess the other context of this is that the government can wait a long time to act if it wants to. It's probably not prudent for it to. But the whole statutory scheme says that for the fines and restitutions, if the government waits 20 years, I mean that's the statute of limitations for the government to seek to enforce that aspect of the criminal judgment. And those things were to be paid before the civil liability that was agreed upon in this civil settlement was to be paid. How are we supposed to kind of think about that in the context of making this decision? Your Honor, I think that the sort of global civil and criminal resolution actually favors a shorter period rather than a longer period. And let me explain why. So the text of paragraph two says that he had to do three things first. Then it says that the proceeds would be applied to criminal, civil, and tax purposes. So he was performing the obligations concurrently. So, for example, the $189,000 payment, that was solely towards a civil agreement. It's not as if – okay, the agreement doesn't say, okay, do all of your criminal stuff first, and then you can satisfy the civil agreement. What it says is you have to do these three things, and that will result in settlement proceeds. The agreement does say that you have to pay off assessments, fines, and restitutions first. Yes, Your Honor, but… I apologize, Your Honor. What I was going to say is that the – but it doesn't – so the thing that we're looking for here is the time that he had to sell the house. So that isn't – if the court looks to the text of the agreement, it doesn't say you can do these two things and then do this years later. What I'm saying is that if he had been fined $1 million, when he sold the house, the proceeds would need to go first to pay whatever the balance of the fine was that he couldn't pay – that couldn't be satisfied with his liquid assets. Yes, Your Honor. He and the government would have had 20 years under the criminal enforcement statutes to force the sale of the house to pay off that fine. It wouldn't have been six months. It would have been 20 years after he got out of prison. And so I understand that that's not the facts here, but when you signed the agreement, you didn't know whether that would be the case or not. That's my point. Fair enough. He didn't know what the fine amount would be. And if the fine amount had have been in excess of what his liquid assets could cover to where he was going to need the sale proceeds of the house to cover the fine amount, then the government could have taken its sweet little time to force the sale of the house to do that. Does that have no relevance to this question? Well, Your Honor, if that were the case in that hypothetical, then yes, the government would have more time, but that would be under its criminal restitution statutory authority. So in this case, the government is acting as a contracting party and the same standards that are applicable to other private contracting parties apply to the government, except to the extent they don't, I think the government should be able to a higher standard, not a lower standard. So I don't think it reflects a longer period because I think if there had been an intent to have this drag on for years, the prosecutor at sentencing wouldn't have said that the government was grateful to have concluded everything at once, and the government wouldn't have entered into this agreement with the purpose of avoiding delay. All right. Judge Katsas, Judge Walker, any other questions? Not for me. All right. Thank you, Mr. Kumar. We'll give you a couple minutes on rebuttal. Mr. McDaniel, we'll hear from you. Thank you, Your Honor. Good morning and may it please the court. First of all, we want to get rid of this notion that this was a vague or unenforceable agreement. Appellate really didn't address that significantly, but we think it just should be dismissed outright. First of all, it conflicts with the notion that this contract should have been performed in six months. This is their conclusion right out, so they seem to be going down that road and not taking a position that this is vague and unenforceable. It also conflicts with Greer's having paid $189,000 on the contract. Certainly, he wouldn't have paid it if he thought genuinely that it was a vague and unenforceable agreement. Third, it conflicts with all of the omissions that Dr. Greer has made about the enforceability of the settlement, basically conceding that this is an enforceable settlement. Now, to come in way after the fact and say this is somehow not a valid agreement, we think just flies in the face of what actually exists here. This is a settlement, in essence, that was desired by Dr. Greer and really favored him in this particular instance. It was raised for the first time by his own attorney at the May 3rd plea hearing there at Supplemental Appendix 27 and 28 and 53. In addition, it was mentioned prominently at sentencing, so much so that he had to file a supplemental sentencing memorandum on the day of sentencing. We see comments about the settlement by the court at Supplemental Appendix 336 and 37. These are fairly significant comments by the court that reflect just the extent to which the court embraced this civil settlement. If it pleases the court, I'd like to read the select portions of that transcript. Well, can I just ask you a question? Suppose the government had filed suit for breach of contract on, let's just say, March 31st, 2010. And they said, look, it's been almost two and a half years, maybe over two and a half years, since this settlement agreement was formed. And it's not the least bit unreasonable to sell a house in two and a half years, even accounting for the time he was in prison and so on. You think the court would have said there was no breach of contract in that case because not enough time had passed for him to sell the house? Well, in this instance, I think the hypothetical puts it approximately a year after his release from prison. Well, I'm trying to put it right before the limitations cutoff, which I think is April 2010. I see. And so in this instance, I think that we still would be in a period of time in which performance was arguably possible within that period of time. But I don't believe that, based on an analysis of the contract, that this is when it was reasonably expected by the parties, based on the language of the contract and based on the reasonable circumstances surrounding the negotiation of the contract. If the contract were silent on timing, you agree that two and a half years would be beyond the bounds of reasonableness? No, not in this instance, because in this instance, it really depends on the parties' intentions at the time of contracting. And here, you have a clear link to the criminal case that's going on and the fact that he gets sentenced, the fact that he has all these restitution, fine, as well as his taxes to pay, which is part of his restitution. And here, you have not only that, but the structure of the agreement itself that says you have the False Claims Act waiver. And so you match the two together, and you see that if you look at the original 51-month guideline-compliant sentence that was recommended by the government, agreed to by Dr. Greer in the plea agreement, and admittedly, he was able to argue the grouping issue for guideline purposes, he was also able to argue the 35-53 factors, but putting that aside, he certainly could anticipate that Judge Leon would sentence him to a sentence that impacted approximately six and a quarter years. And so that just so happens to coincide with the period of time that's waived by the False Claims Act. So we believe that you're looking at a period of time contemplated for performance of six and a quarter years. And so here, in these circumstances, we contend that this was a reasonable time for performance within that period. Well, the other contextual point we know about the underlying false claims is that they are alleged to have occurred over a six-year period. So just as plausible an explanation for the limitations waiver on the false claims is government had claims going all the way back to 2000. From the perspective of 2007, they would have been facing time bars for claims in the earlier range of that period, they would have been facing time bars right away. So the fact that they act to preserve the timeliness of those borderline stale False Claims Act claims doesn't really tell us anything about the performance time for selling the house. We disagree with that in the criminal context. This could be liability in the nature of a scheme. There were other people involved. So one criminal act that's alleged to have perhaps started on one date may not have ended on the date that it started. And so it's certainly plausible here that we have criminal conduct that spanned a period of time, starting at one date, ending on another date. And so we don't think that this is necessarily a situation where you have multiple criminal acts that are being analyzed pursuant to successive statutes of limitations on the False Claims Act claim, but one's criminal scheme. He's treating patients and he's billing for services that you all think are unnecessary. Each claim that he submits is a separate action under the False Claims Act. Certainly. So each one is going to have its own limitations period. Certainly, but you also have a situation where you have fraudulent conduct that is repeatedly engaged in over a period of time and could be analyzed as a scheme as well as separate acts. And so because of that, we contend that it's not necessarily the only way to analyze it as a separate act. Okay, thanks. Council, how are we supposed to interpret what is a reasonable time for performance? Are we supposed to look solely at what the parties thought as of the day that they executed the agreement? Yes, we think that the analysis should be confined to the negotiation of the negotiation period of the contract and what the parties intentions were as reflected by the circumstances surrounding that negotiation. And here... The trend on the other side says that you can look at kind of post-execution or, you know, post-July 24th events to help inform what the party's understanding was. Do you agree or disagree with that? Your Honor, we disagree with that. The parole evidence rule essentially prohibits that type of analysis and the Clayman and Hartman decisions that we cite that certainly support that position. And we contend that that would be a flawed analysis. In fact, the analysis that appellate engages in, in which it basically jumps to the conclusion initially and discusses the statute of limitations without first analyzing whether... It is a flawed analysis without taking that approach that is recommended in the court's decisions or set forth, I should say, in the court's decisions. And that analysis here, we think, leads to the conclusion that Dr. Greer had at least six years to sell the house. And we believe consequently that we were within the six-year limitations period at the time we sent him the demand letter and ultimately filed suit in this matter. Now, just so that I get the government's position clear on the record, you've asked us to affirm. It appears that below you asked for summary judgment, of course. And you are not saying that the question of what is the length of time that is reasonable to perform under the contract is a factual question to be determined by a jury? No, we're not taking that position. We agree that it's a question of law. And we understand the court is reviewing the district court's decision de novo. All right. Judge Katsas, Judge Walker? All set. I could ask a couple. Going back to the parole evidence rule, the cases that you cite, do they stand for the proposition that a court should not consider parole evidence from conduct occurring before the contract was formed? Or do they go beyond that and stand for the proposition that the court can also not consider conduct after the contract was formed? I believe it does go to conduct after the contract is formed, particularly in the actual performance period. The question is, what are you trying to do? And it appears to us, based on the case law, that you're essentially trying to get to the heart of the party's intention. So, Mr. McDaniel, I will go back and read them, and I may well be misremembering what they say. But assume that those cases concern only parole evidence, excluding the parole evidence that occurred before contract formation. What's your best argument if that's the case? My best argument, Your Honor, essentially is that at the time the contract was formed, and I think the focus is, regardless of what you can look at, the focus is the intention of the parties in the circumstances of their contracting. And certainly the best evidence of that is what was going on at the time of the contract signing here, July 24th, 2007, two days before sentencing. Again, he's facing a lot of time. He's facing a lot of money. And his own attorney, if you look at the language of what he's saying, his own attorney is saying in the transcript, he makes statements regarding the need for a reasonable amount of time and a reasonable period, again, on 337 of the Supplemental Appendix, a reasonable period of time in which to make these payments. And this is in the context of him discussing the interest penalty as well. And so in that context, we see statements by counsel clearly saying that we want time to pay this amount off. And as well, we see from the record that even if you consider facts after the negotiation, you see that he was not really able to pay the criminal restitution and fine until days before he had to report to prison. So he had quite a bit of work to do. He was still trying to resolve his practice. He's still trying to liquidate his assets. It was not reasonable for him to be able to do all of this and at the same time prepare his life to go on to prison, as the district court noted in this opinion. So we think that looking at these criminal circumstances, the criminal case circumstances and interpreting this agreement in that context certainly leads to the conclusion that he had time to perform the sale of the house, which was sort of in the analysis of the agreement at the end of the assets that had to be called upon to pay these various items. Mr. McDaniel, my last question is similar really to one that I asked Mr. Kumar from his perspective. The contract is signed July 2007. Greer is released from prison, March 2009. It's your signature on it. You sent him a letter asking for a performance December 2015. Yes. So the period between 2009 and 2015, what took you so long? Your Honor, I wasn't personally involved, so it was for me an effort to recreate what exactly took place during that time. It was not clear to me exactly what took place. Did you ask? I did ask. Based on the information I learned, I could only speculate about what happened, but it looks like people were indulging Dr. Greer based on his son's circumstances, but that's sort of speculative on my part. I just don't know exactly what happened in that instance. Okay. Fair enough. I'm good. All right. Thank you, Mr. McDaniel. Mr. Kumar, you were out of time, but we'll give you two minutes. Thank you, Your Honor. As to Supplemental Appendix page 337 that refers to a reasonable period of time, that referred to a period of months when Dr. Greer liquidated his pension plan. So I don't think that shows that three years or eight years was reasonable. As to the government's reliance on claimant, and I think this is important, so the government relies on footnote 44 in claimant. That says that parole evidence is inadmissible when the contract is silent to show that the contract would be performed at a particular time. It doesn't say parole evidence is inadmissible to show that the contract would be performed to show what a reasonable time would be. And if the court had any doubt about what this court in claimant was saying, it could look to the Colorado Women's College case, which is cited in that footnote. There, the court made clear that, you know, parole evidence wasn't admissible to alter the written contract, but it was admissible to show what a reasonable time would be. And Restatement Section 204, Comment E, makes the same point. Can I ask you about that? And I'm particularly interested in following up on some questions Judge Wilkins put to you. So the way I was thinking about the case is contract is largely silent on time. So the governing legal rule that we read into it is reasonable time to perform. And then we look at the facts on the ground to assess reasonableness and for reasons we've discussed. Given the way things turned out, you've got a pretty strong case that two and a half years is more than enough. But why isn't it better to think about this as on the question of contract interpretation, you read into the contract reasonable amount of time. And then you ask yourself, well, what would be a reasonable amount of time, given what the parties knew at the moment of formation? When it might have turned out that he went to prison for five years and had the substantially greater fines imposed and those facts would tend to show that a much longer period of time would be reasonable. Sure. So I don't think that looking at it at the formation point is necessarily as one-sided as that, because I think if the government had all kinds of options. But the reason that I bring up the – there's a textual reason that I bring up. Do you think it's right to assess reasonableness at the time of formation based on what the parties knew at the time of formation or based on how things turned out? So I think the court should consider both. Right. So I think because I think the textual point that I would make, Your Honor, is that paragraph two says that Dr. Greer shall do three things. And the actual performance reflects how the parties understood what that textual command meant. And Dr. Greer interpreted that to mean I have to do this now. I have to do this in September and I have to liquidate my retirement plans immediately. There's no textual evidence, and there's no – it's not backed up by any concrete evidence in the performance history that that was the party's intention to have a separate years-long time for performance. If I could just briefly, Your Honor, say a word about – I know I'm over my time, but our second issue about enforceability, I would just say that we don't concede that the contract is enforceable because this appeal is just about the obligation to sell the house. And to date, the government hasn't cited a single case enforcing a contract that was missing price, price calculation, and time. And we cite three cases, this court's decision in Queen v. Schultz, Rosenthal, and New Economy Capital holding contracts unenforceable for lack of a price term, which just goes to show that this court would never enforce a contract like this between private parties. If anything, the government should be held to a higher standard, but at the very least, it should be held to the same standard. So if the court concludes that the government's nine-year-old claim is timely, we'd ask still that the court reverse because the contract is unenforceable. And in any event, we'd ask the court to reverse and direct the district court to grant summary judgment for Dr. Greer. All right. Thank you. The case is submitted.
judges: Wilkins, Katsas, Walker